Slip Op. 14 - 107

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| MEX Y CAN TRADING USA LTD., | : | |
| Plaintiff, | : | |
| | : | Before: R. Kenton Musgrave, Senior Judge |
| v. | : | Court No. 12-00329 |
| UNITED STATES, | : | |
| Defendant. | : | |

**OPINION**

[On cross-motions for summary judgment, judgment for the defendant.]

Decided: September 12, 2014

  *Mitchell S. Fuerst*, and *Stephen H. Wagner*, Fuerst Ittleman David & Joseph, of Miami, FL, for the plaintiffs.

  *Aimee Lee*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the defendant. On the brief were *Stuart F. Delery*, Assistant Attorney General, *Amy M. Rubin*, Acting Assistant Director, International Trade Field Office. Of Counsel on the brief was *Chi S. Choy*, Attorney, Office of the Assistant Chief Counsel for International Trade Litigation, U.S. Customs and Border Protection, of Washington DC.

  **Musgrave, Senior Judge:** Mex Y Can Trading USA Ltd., a U.S. importer, initiated suit to contest the denial of a protest by U.S. Customs and Border Protection concerning duty-free treatment of 156 entries of fresh cut flowers from Columbia. At the time of the entries, February 13, 2011 through July 17, 2011, duty-free benefits pursuant to the Andean Trade Preference Act ("ATPA"), 19 U.S.C. §§ 3201-3206, *et seq.*, had been terminated for Colombia, but on October 21, 2011, with the enactment of the U.S.-Colombia Trade Promotion Agreement Implementation Act

Court No. 12-00329                                                                                                 Page 2

("USCTA"), ATPA benefits were, by that amendment, renewed for Colombia until the new date of expiration, *i.e.*, July 31, 2013. Pub. L. 112-42, 125 Stat. 462 (Oct. 21, 2011). The USCTA also provided importers with a 180-day window within which to request retroactive application for entries made during the lapsed period. *Id*. at §501(c)(2). Moving for summary judgment here pursuant to USCIT Rule 56, the plaintiff claims a letter sent to the defendant by its custom broker, which the defendant denied as untimely, was in fact a timely request for ATPA duty-free treatment in accordance with the USCTA. *See* Pl's Mot. for Sum. Judgment (Mar. 10, 2014), ECF No. 20 ("Pl's Mot.") at 5; *see also* Exhibit A to Def's Mot. (Apr. 30, 2012). The defendant cross-moves for summary judgment pursuant to USCIT Rule 56, arguing that it both properly rejected the plaintiff's duty refund submission as untimely and denied the plaintiff's subsequent protest regarding the submission. Def's Mot. for Sum. Judgment (Mar. 10, 2014), ECF No. 21 ("Def's Mot."). The court must grant the defendant's cross-motion and deny the plaintiff's motion.

I. *Background*

The ATPA provided for entry free from duties, fees, and taxes for certain eligible imports that were the growth, product, or manufacture of Ecuador, Colombia, Peru, and Bolivia.[1] ATPA benefits for Columbia expired on February 12, 2011. On October 21, 2011 the USCTA was signed into law and extended ATPA trade preference benefits for Columbia until July 31, 2013. USCTA at §501(a). The USCTA, through a retroactive application of ATPA benefits, also allowed importers to request reliquidation for otherwise eligible imports that entered the U.S. during the

---

[1] *See* ATPA at §§ 3201-3206; *see also* Assignment of Function Under Section 203(e)(2)(A) of the Andean Trade Preference Act, as amended, 73 Fed. Reg. 56701 (Sep. 25, 2008) (removing Bolivia from the list of beneficiary countries).

lapsed time period, but only if refund requests were filed with the defendant "not later than 180 days after the date of the enactment of [the USCTA]". *Id*. at §501(c)(2)(B). On October 26, 2011, the defendant issued CSMS Message No. 11-000267 through its Cargo Systems Messaging Service instructing members of the trade community as to the USCTA's enactment and provisions.[2]

The 156 fresh cut flower entries ("subject imports") occurred during the period ATPA program benefits for Columbia had lapsed. *See* Pl's Mot. at 2, referencing Compl. at ¶5 and Summons; *see also* ATPA at §3206(a)(1)(A)(2010). The defendant received the plaintiff's refund request for ATPA benefits on May 1, 2014. The request sought refund of the duties, fees, and taxes that the plaintiff had paid for the subject imports. *See* Exhibit A to Def's Mot. The defendant rejected the plaintiff's request noting that the "[p]rogram has ended". *See* Exhibit B to Def's Mot. (May 7, 2012). The defendant subsequently denied the plaintiff's protest of the duty refund request rejection, on the ground that the plaintiff's "May 1, 2012 request is untimely". *See* Complaint at ¶¶ 8-9; *see also* Answer at ¶¶ 8-9; Exhibit A to Pl's Mot., HQ H223716 (Aug. 14, 2012).

II. *Discussion*

The court has jurisdiction pursuant to 28 U.S.C. §1581(a), and shall grant summary judgment if the movant has shown "that there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." USCIT Rule 56(a). The plain language of

---

[2] CSMS Message No. 11-000267 originated from the Cargo Systems Messaging Service, a "searchable database of messages" to which e-mail subscribers may also be provided "timely notification of new messages". *See* Cargo Systems Messaging Service, "ATPA/ATPDEA Extended with Retroactivity, Instructions for the Trade Community", CSMS No. 11-00267 (Oct. 26, 2011) available at http://apps.cbp.gov/csms/viewmssg.asp?Recid=18512 (last visited this date) ("CSMS Message"); *see also* Automated Commercial System and ABI CATAIR, available at http://apps.cbp.gov/csms/csms.asp?display_page=1 (last visited this date).

section 501(c)(2)(B) of the USCTA requires duty refund requests to be filed with the defendant "not later than 180 days after the date of the *enactment* of [the USCTA]" to be considered timely. USCTA at §501(c)(2)(B) (italics added). Enactment of a bill is "the action or process of making into law", and a bill becomes a law when the President signs the bill. *See* U.S. Const. art. I, §7, cl. 2; *see also Gardner v. Collector of Customs*, 73 U.S. 499, 504-06 (1867); *Black's Law Dictionary* 643 (10th ed. 2014) (defining enactment). The President signed the USCTA, enacting it into law, on October 21, 2011, making April 18, 2012 the unambiguous deadline for submitting duty refund requests under section 501(c)(2)(B), a deadline that neither party contests.[3]

The plaintiff's refund request filed with the defendant on May 1, 2013 was untimely. The plaintiff avers, however, that it filed the request late as a result of reasonably relying on the CSMS Message, in which it claims the defendant promulgated an incorrect deadline for duty refund requests and "created ambiguity where none previously existed." Pl's Mot. at 19. The CSMS Message states:

> On October 21, 2011, *the President signed [the USCTA]*, *which extends [] the [ATPA][] program[]* through July 31, 2013. *The ATPA[] program[]*, having lapsed February 12, 2011, *[has] been retroactively renewed* for [] Columbia, allowing for a refund of all duties paid on ATPA[]-eligible merchandise . . . . Benefits under the ATPA[] will commence on November 5, 2011, 15 days after the October 21, 2011, Presidential signing date.
> \* \* \*

---

[3] *See* USCTA; *see also* Pl's Resp. in Opp. To Def's Mot. for Sum. Judgment (May 5, 2014), ECF No. 26 ("Pl's Resp.") at 6 ("[p]laintiff concedes that the plain English of the [USCTA] is unambiguous with respect to the deadline established for duty refund requests"); Pl's Mot. at 6 ("the [USCTA] may state that requests for reliquidation -- such as [plaintiff's] Duty Refund Request -- must be received by [the defendant] 'not later than 180 days after the *date of the enactment* of [the USCTA]'") (plaintiff's italics); Pl's Mot. at 9 ("[plaintiff], concedes that the *enactment date* of the [USCTA] was the date that the President signed the [USCTA] into law, October 21, 2011.") (plaintiff's italics); Def's Resp. in Opp. to Pl's Mot. For Sum. Judgment (May 5, 2014), ECF No. 27 ("Def's Resp.") at 2-3.

> ATPA[] refunds for all entries entered or withdrawn from warehouse for consumption during the lapse period will be processed upon receipt of a valid refund request. Claims may be made [] . . ., as long as they meet all the applicable time requirements. . . .
>
> * * *
>
> A valid liquidation or re-liquidation request must be filed with [the defendant] *within 180 days of the ATPA[] renewal date*.

*See* CSMS Message (italics added). Pointing out that the term "renewal" is not defined in the USCTA or in its legislative history, the plaintiff argues that the renewal date of the USCTA is synonymous with its effective date, which it avers is on November 5, 2011, 15 days after the enactment date. *See* Pl's Mot. at 9-14; *see also Johnson v. United States*, 529 U.S. 694, 694-95 (2000), referencing *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991) (stating that a law takes effect on the date of its enactment absent a clear direction by Congress).

        The court must construe the language of the CSMS Message in accordance with law to the extent possible, and it finds Commerce's use of "ATPA[] renewal date" was reasonable and not ambiguous as to the deadline for duty refund requests. The term "ATPA[] renewal date" in the CSMS Message does not refer to the date upon which benefits under the ATPA will commence, but instead the date on which the ATPA program was renewed -- the enactment date. The term "renewal" is defined as "[t]he act of restoring or reestablishing" and "[t]he re-creation of a legal relationship or the replacement of an old contract with a new contract, as opposed to the mere extension of a previous relationship or contract." *Black's Law Dictionary* 1488 (10th ed. 2014).[4] On October 21, 2011 the President signed and enacted the USCTA into law, effectively renewing,

---

    [4] The plaintiff argues that, "[i]n the world of insurance" the term "renewal date" commonly denotes a date triggered by an "effective date" or the anniversary thereof, however the insurance case the plaintiff cites to is not factually analogous the customs issue before the court. Pl's Mot. at 13-14, referencing *Boseman v. Conneticut Gen. Life Ins. Co.*, 301 U.S. 196, 200 (1937).

restoring, and reestablishing the ATPA program. The CSMS Message reflects this ATPA program renewal by first stating that the President's signing of the USCTA "extends" and "retroactively renewed" the lapsed ATPA program, and later stating that refund requests must be filed with the defendant "within 180 days of the ATPA[] renewal date." Although the defendant did not use the exact term "enactment date" or "Presidential signing date" when discussing the deadline for duty refund requests in the CSMS Message, its use of "within 180 days of the ATPA[] renewal date" in reference to the renewal date of the ATPA program is not inconsistent with the deadline set unambiguously under section 501(c)(2)(B) of the USCTA.

        The plaintiff argues that the defendant relinquished its right to summary judgment by not addressing the CSMS Message or the plaintiff's reliance on the message in its motion for summary judgment, facts the plaintiff claims are genuine and material. Pl's Resp. at 3-8. The fact that the defendant has not discussed the CSMS message is not an admission that it is ambiguous, since the only valid interpretation of it is one that would support the unambiguous language of the USCTA. *See e.g., Precision Specialty Metals, Inc. v. United States*, 24 CIT 1016, 1024, 116 F. Supp. 2d 1350, 1360 (2000) ("[i]f that statute is clear on its face, the court must follow Congressional intent, regardless of the existence of an interpretation by Customs to the contrary"). The CSMS Message does not "establish a completely different deadline" for refund requests or create an ambiguity that would preclude summary judgment for the defendant, as argued by the plaintiff. The message accordingly would not affect the outcome of the suit under the governing law. *See Lindahl v. Air France*, 930 F.2d 1434, 1436-37 (9th Cir. 1991), referencing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (a fact is material if it could affect the outcome of the suit, and factual disputes which are "irrelevant or unnecessary will not be counted").

The forgoing obviates detailed discussion of the plaintiff's equitable tolling argument. Even assuming, *arguendo*, such argument to be relevant, the plaintiff's main contention in this regard relies upon, *Bull S.A. v. Comer*, 55 F.3d 678 (D.C. Cir. 1995), in which the court granted an equitable tolling request as a result of that litigant's justifiable reliance on a government official who advised the litigant as to a certain unambiguous date that turned out to be erroneous advice. The plaintiff here has not persuaded that the "ambiguity" relevant to its circumstances is analogous to *Bull*, as the CSMS Message cannot reasonably be construed in the manner advocated by the plaintiff, nor does the plaintiff offer proof of activity that could reasonably be construed as detrimental reliance upon official advice. That is, this not an instance where a government official has issued erroneous advice contrary to law upon which the recipient could reasonably rely, nor has the plaintiff provided other "equitable reasons" that excuse its failure to meet the statutory deadline. *See id.* at 681-83. The court has considered the plaintiff's other arguments and finds them unpersuasive.

### III. *Conclusion*

The defendant's filings and the undisputed facts demonstrate that the plaintiff's duty refund request was untimely as a matter of law. There being no genuine issues of material fact requiring trial, judgment will enter accordingly.

**So ordered.**

/s/ R. Kenton Musgrave
R. Kenton Musgrave, Senior Judge

Dated: September 12, 2014
    New York, New York